COTTEN *v.* HAMBLIN.

5-2478                                          350 S. W. 2d 612

Opinion delivered November 6, 1961.

*J. B. Milham* and *Gladys M. Cummins*, for appellant.

*John L. Hughes* and *Ben M. McCray*, for appellee.

ED F. MCFADDIN, Associate Justice. This appeal stems from appellants' attempt to set aside an order of adoption, and the only question here presented is whether there was a defect of parties. The Probate Court held that there was a defect, refusing to hear the evidence, and dismissed the petition. From that ruling, there is this appeal.

The appellants, Mr. and Mrs. J. C. Cotten, are the paternal grandparents of two little boys, Roy, aged 14,

and Edward, aged 12. In October 1959, the Saline Probate Court made an order of final adoption (§ 56-108 *et seq.* Ark. Stats) whereby the appellees, Mr. and Mrs. Hamblin, adopted the two little boys. In October 1960, Mr. and Mrs. Cotten filed a suit in the Saline *Chancery* Court to set aside the order of adoption. That case came before us in *Cotten* v. *Hamblin,* 233 Ark. 65, 342 S. W. 2d 478, wherein we held that the *Chancery* Court was without jurisdiction; and our opinion concluded: "We accordingly affirm the decree without prejudice to the appellant's right to apply to the probate court for such relief as he may be entitled to — a point upon which we express no opinion."

On February 21, 1961, Mr. and Mrs. Cotten filed the present petition in the Saline *Probate* Court, seeking to set aside the order of adoption, and they alleged: (1) That the petitioners were the paternal grandparents of the two little boys; that the petitioners, at all times, lived and resided in Garland County; that the little boys were living and residing with the petitioners in 1959; that the boys went to school, and the Hamblins took the children from school and proceeded with the adoption without notice to the petitioners. (2) That at the time of the adoption the boys were residents of Garland County and could not be legally adopted in a proceeding in the Saline Probate Court. (3) ". . . That the defendants are unable to get along with said minor children and have beat and abused said children without just cause, and especially beat and whipped Roy Jean with a large stick of wood and caused said children to leave their home in night-time and tramp through the woods to their grandparents, plaintiffs herein, that defendants and the children were strangers to each other at the time of adoption and said minor children have become somewhat hostile to said adopted parents."

On motion of the Hamblins, the Probate Court, without hearing any evidence, dismissed the petition by an order which recited:

"That petitioners, who are the paternal grandparents of the adopted children, are not the proper parties to maintain an action to annul the adoption decree, the natural parents of said children having consented to said adoption[1] and not having joined petitioners in their petition to annul said adoption decree."

As aforesaid, the only question here presented is whether the petitioners are proper parties to maintain this action to annul the order of adoption. In *Gillen* v. *Edge,* 214 Ark. 776, 217 S. W. 2d 926, the natural mother of a little girl filed a petition to annul the order of adoption. The Probate Court held that only the Welfare Department could maintain such a petition. In reversing the Probate Court's ruling, we said:

"Both the statute in force in 1943 (Pope's Digest, § 263) and the present law (Ark. Stats. (1947), § 56-110) provide that a petition to annul an adoption order may be filed if the adoptive parents fail to perform their obligations. Neither act specifies by whom the petition must be filed, and it is obvious that the natural mother ordinarily has a deeper interest in her child's welfare than anyone else. Appellant's consent to the proceedings was of course based on the assumption that the appellees would give her daughter proper care. If they have not done so, appellant certainly has the privilege of bringing that fact to the court's attention. We do not construe Ark. Stats. (1947), § 56-118, as vesting in the Child Welfare Division the exclusive power to seek annulment of an adoption order."

Of course, a rank outsider or mere stranger could not maintain a petition to annul an order of adoption, but in the case at bar the petitioners alleged that the little boys were living with petitioners who had the care and custody of the children for many years before they

---

[1]For whatever force it may have, there is in the transcript here before us, the report of the State Welfare Department concerning the children and their parents at the time of the original adoption. On the trial on remand, we are of the opinion that there should be evidence obtained as to the present condition of the parents and their attitude toward the present litigation.

were taken away. So the petitioners occupied some sort of semi *loco parentis* relationship to the children, and are not entire strangers. A grandmother was held entitled to resist an adoption proceeding in *Fries* v. *Phillips,* 189 Ark. 712, 74 S. W. 2d 961. Furthermore, in the case at bar, the petition for annulment alleged that the adopting parents were mistreating the children. Section 56-110 Ark. Stats. lists as the first cause for annulling an order of adoption, ''The adopting parents have failed to perform their obligations to the adopted person.'' In every case the best interest of the child is the paramount question. § 56-108 Ark. Stats.; *Caples* v. *Wages,* 219 Ark. 252, 241 S. W. 2d 111; 2 C. J. S. 436 *et seq.,* ''Adoption of Children,'' § § 45, 57.

In the case at bar the Probate Court should have heard the evidence to see what was best for the children and also whether the original adoption was valid or should be annulled for one of the reasons set forth in the statute. Under the facts here alleged, the petitioners were not entire strangers; and the Court should have heard the evidence. The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.